1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES KOURETAS,                         No.  2:13-cv-02632-MCE-KJN

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   NATIONSTAR MORTGAGE
     HOLDINGS, INC., et al.,
15

16              Defendants.

17         On December 20, 2013, Plaintiff James Kouretas ("Plaintiff") filed the operative

18   Complaint against Defendants Nationstar Mortgage Holdings, Inc. ("Nationstar") and

19   Bank of America, N.A. ("BofA") (collectively "Defendants").  Compl., ECF No. 1.  Plaintiff

20   asserts causes of action for violations of the Homeowner Bill of Rights, Cal. Civ. Code

21   § 2923.6(b), and Elder Abuse, Cal. Welf. & Inst. Code §§ 15600-15675, as well as civil

22   Racketeering Influenced and Corrupt Organizations Act ("RICO") violations, 18 U.S.C.

23   §§ 1961-1968.  BofA filed a Motion to Dismiss for failure to state a claim pursuant to

24   Federal Rule of Civil Procedure 12(b)(6).[1]  BofA Mot., Jan. 13, 2014, ECF No. 13.

25   Nationstar filed a Motion to Dismiss the following day.  Nationstar Mot., Jan. 14, 2014,

26   ECF No. 16.

27   _____

28        [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
     otherwise noted.

                                              1

1   Plaintiff filed a timely opposition to these motions.  Opp'n, Feb. 19, 2014, ECF No. 22.

2   For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED.[2]

3

4   **BACKGROUND[3]**

5

6   Plaintiff holds title to the property known as 3324 S Street, Sacramento,

7   California, 95816.  The property was secured by a first deed of trust in favor of Bank of

8   America.  In November 2013, Nationstar Mortgage Holdings became the loan servicer.

9   In May 2013, Plaintiff wrote to Bank of America to request a loan modification.  A

10  Bank of America representative responded, stating that the bank had received his

11  request and was transferring the request to a specialist.  Plaintiff was told the bank

12  would contact Plaintiff within fifteen days.  Then, on May 28, 2013, Bank of America

13  recorded and served Plaintiff with a notice of trustee's sale.  However, in June 2013,

14  Bank of America wrote to Plaintiff, stating that his loan modification request had been

15  forwarded to a specialist.  Then, a week later, Bank of America sent Plaintiff a Notice of

16  Intent to Accelerate, threatening to accelerate repayment of the full amount of the note

17  despite the fact that Plaintiff's loan was being evaluated for a loan modification.

18  In July 2013, Plaintiff completed and again submitted loan modification papers to

19  Bank of America.  Bank of America sent a letter stating that Plaintiff was being

20  considered for a short sale.  Thereafter, Bank of America sent another letter to Plaintiff,

21  acknowledging receipt of Plaintiff's request for a loan modification and stating that the

22  request was forwarded to a specialist in the appropriate department.  However, on

23  August 1, 2013, Bank of America recorded a notice of default.  Then, on September 3,

24  2013, Bank of America recorded a second notice of default.

25  ///

26  _____

    [2] Because oral argument would not be of material assistance, the Court ordered these matters
27  submitted on the briefs pursuant to E.D. Cal. Local Rule 230(g).

    [3] The following recitation of facts is taken, at times verbatim, from Plaintiff's Complaint.  ECF
28  No. 1.

1 | Later in September, multiple Bank of America representatives wrote to Plaintiff, stating
2 | that they would "continue the work [Plaintiff] started" with Plaintiff's previous points of
3 | contact at the bank.

4 |      Finally, in October 2013, Bank of America informed Plaintiff that they would not
5 | modify Plaintiff's loan.  Thereafter, Plaintiff's loan servicing was transferred to Nationstar.
6 | Nationstar wrote to Plaintiff in November 2013, informing Plaintiff that Nationstar wanted
7 | to help Plaintiff stay in his home.  Nonetheless, in December 2013, Plaintiff received a
8 | notice of trustee sale, which is scheduled to take place on Monday, December 30, 2013.

9 |
10 | **STANDARD**
11 |

12 |      On a motion to dismiss for failure to state a claim under Federal Rule of Civil
13 | Procedure 12(b)(6), all allegations of material fact must be accepted as true and
14 | construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.
15 | Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain
16 | statement of the claim showing that the pleader is entitled to relief" in order to "give the
17 | defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell
18 | Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,
19 | 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require
20 | detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of
21 | his entitlement to relief requires more than labels and conclusions, and a formulaic
22 | recitation of the elements of a cause of action will not do."  Id. (internal citations and
23 | quotations omitted).  A court is not required to accept as true a "legal conclusion
24 | couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)
25 | (quoting Twombly, 550 U.S. at 555).
26 | ///
27 | ///
28 | ///

3

1  "Factual allegations must be enough to raise a right to relief above the speculative level."

2  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal

3  Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain

4  something more than "a statement of facts that merely creates a suspicion [of] a legally

5  cognizable right of action.")).

6        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

7  assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

8  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

9  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

10  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

11  Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

12  facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

13  have not nudged their claims across the line from conceivable to plausible, their

14  complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

15  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

16  recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

17  232, 236 (1974)).

18        A court granting a motion to dismiss a complaint must then decide whether to

19  grant leave to amend.  Leave to amend should be "freely given" where there is no

20  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

21  to the opposing party by virtue of allowance of the amendment, [or] futility of the

22  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

23  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

24  be considered when deciding whether to grant leave to amend).  Not all of these factors

25  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

26  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

27  185 (9th Cir. 1987)).

28  ///

4

1    Dismissal without leave to amend is proper only if it is clear that "the complaint could not

2    be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048,

3    1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005);

4    Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need

5    not be granted where the amendment of the complaint . . . constitutes an exercise in

6    futility . . . .")).

7

8                                        **ANALYSIS**

9

10          As stated above, Plaintiff brings claims for violations of the Homeowner Bill of

11   Rights, California's Elder Abuse law, and the civil RICO statutes.  Each claim is

12   addressed in turn, below.[4]

13          **A.      Homeowner Bill of Rights**

14          Plaintiff asserts that he is entitled to relief under the California Homeowner Bill of

15   Rights, Cal. Civ. Code § 2923.6(b), because Defendants engaged in "dual tracking" in

16   violation of California Civil Code § 2923.6(c).  Compl. at 5.  Plaintiff also states a cause

17   of action against BofA for providing Plaintiff with "no fewer than three points of contact

18   while . . . taking affirmative steps to foreclose on [Plaintiff's] home," Compl. at 6, in

19   violation of California Civil Code § 2923.6(a).

20          The California Homeowner Bill of Rights went into effect on January 1, 2013, and

21   it offers homeowners greater protection during the foreclosure process.  Id.  Section

22   2923.6(b) states "it is the intent of the legislature that the mortgage servicer offer the

23   borrower a loan modification or work out a plan if such a modification or plan is

24   consistent with its contractual or other authority."

25   ///

26   ///

27          ───────────────

            [4] While Defendants each submitted a Request for Judicial Notice in support of their respective

28   motions, ECF Nos. 14, 17, because the Court did not consider the documents contained therein, those
     Requests are DENIED AS MOOT.

1    The statute further provides that "if a borrower submits a complete application for

2   a first lien loan modification . . . the mortgage servicer . . . shall not record a notice of

3   default or notice of sale, or conduct a trustee's sale, while the complete first lien loan

4   modification application is pending."  Id. § 2923.6(c).  Plaintiff alleges that Defendants

5   violated the California Homeowner Bill of Rights by engaging in "dual tracking," or

6   negotiating with Plaintiff for a loan modification while simultaneously advancing the

7   foreclose process.

8    Importantly, however, the California Homeowner Bill of Rights applies only to "first

9   lien mortgages or deeds of trust that are secured by owner-occupied residential real

10   property containing no more than four dwelling units. For these purposes, 'owner

11   occupied' means that the property is the principal residence of the borrower . . . ."  Cal.

12   Civ. Code. § 2924.15(a).  Plaintiff's Complaint makes no allegations, nor provides any

13   evidence, that the property at issue is his principal residence.  Rather, Plaintiff states that

14   he "holds title to the property."  Compl. at 3.  Moreover, Plaintiff does not contend in his

15   Opposition that he has sufficiently alleged these two causes of action.

16    Because Plaintiff has failed to allege that the property at issue is his principal

17   residence, Defendants' motions to dismiss Plaintiff's first two causes of action are hereby

18   GRANTED.

19    **B.    Civil RICO Violations**

20    "Under 18 U.S.C. § 1962(c), it is unlawful 'for any person employed by or

21   associated with any enterprise . . . to conduct or participate, directly or indirectly, in the

22   conduct of such enterprise's affairs through a pattern of racketeering activity or collection

23   of unlawful debt.'  'Racketeering activity' is defined as a number of 'generically specified

24   criminal acts as well as the commission of one of a number of listed predicate offenses.'"

25   Dotson v. Metrociti Mortg., CIV. S-10-3484 KJM, 2011 WL 3875997 (E.D. Cal. Aug. 31,

26   2011) (quoting Sosa v. DirectTV, Inc., 437 F.3d 923, 939 (9th Cir. 2006)).

27   ///

28   ///

1  Although § 1962 defines a crime, a plaintiff may seek civil remedies for RICO violations if

2  he has been "injured in his business or property by reason of a violation of [§] 1962 . . . ."

3  18 U.S.C. § 1964(c).

4       To state a RICO claim, a plaintiff must allege: (1) conduct; (2) of an enterprise;

5  (3) through a pattern; (4) of racketeering activity, establishing that (5) the defendant

6  caused injury the plaintiff's business or property.  Sedima, S.P.R.L. v. Imrex Co.,

7  473 U.S. 479, 496 (1985); Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir.2007)

8  (internal quotations omitted).  "Enterprise" is defined as "any individual, partnership,

9  corporation, association, or other legal entity, and any union or group of individuals

10 associated in fact although not a legal entity."  18 U.S.C. § 1961.  Racketeering activity

11 includes any act which is indictable under certain provisions of Title 18 of the United

12 States Code. See 18 U.S.C. § 1961(1)(b); McAnelly v. PNC Mortg., 2:10-CV-02754-

13 MCE, 2011 WL 6260537 (E.D. Cal. Dec. 15, 2011).  To properly plead a RICO violation

14 for civil damages, a plaintiff must therefore show that the defendants, through two or

15 more acts constituting a pattern, participated in an activity affecting interstate commerce.

16 Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010).

17      Here, Plaintiff alleges that "Defendants . . . conspired amongst one another to

18 create an enterprise whereby they would utilize their positions of power to 'service

19 transfer' the loan in order to 'cleanse' the violations of the California Homeowner Bill of

20 Rights.  Specifically, by transferring the note to Nationstar for foreclosure, [BofA] could

21 not be held liable for actually foreclosing on the property after engaging in violations of

22 the law.  For its part, Nationstar could be free to foreclose without being held liable for

23 dual-tracking because it ostensibly never engaged in any substantive negotiations with

24 Mr. Kouretas."  Compl. at 6-7.  Thus, according to Plaintiff, Defendants engaged in a

25 pattern of activity which allowed them to "separately and together violate California law

26 for the purposes of enriching a third party."  Compl. at 7.

27 ///

28 ///

7

1    There are several problems with this claim.  First, as stated above, "[t]he term
2   'racketeering activity' includes 'any act indictable under several provisions of Title 18 of
3   the United States Code, and includes the predicate acts of mail fraud, wire fraud and
4   obstruction of justice.'"  Sanford, 625 F.3d at 557.  Plaintiff does not allege that
5   Defendants engaged in any of the acts that constitute racketeering activity.  Violations of
6   the Homeowner Bill of Rights are not predicate offenses under RICO.  See 18 U.S.C.
7   § 1961.

8    Moreover, to the extent that Plaintiff attempts to allege that Defendants engaged
9   in fraudulent actions, these facts must be pled with the particularity required by Rule
10   9(b).  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004) (citing Alan
11   Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1989)) (heightened
12   pleading standards of Rule 9(b) apply when RICO predicate acts are acts of fraud).
13   Under Rule 9(b)'s requirement, a plaintiff must plead with particularity the time, place,
14   and manner of each act of fraud, as well as the role of each defendant in each scheme.
15   See Fed. R. Civ. P. 9(b); Sun Savings & Loan Ass'n v. Dierdorff, 825 F.2d 187, 196 (9th
16   Cir. 1987).

17    Even if Plaintiff had sufficiently alleged a RICO violation, she has failed to allege a
18   "concrete financial loss" to her business or property.  See Oscar v. Univ. Students Coop.
19   Ass'n, 965 F.2d 783, 785 (9th Cir.1992) (en banc).  "The fifth element has two subparts:
20   the plaintiff must show that the injury was proximately caused by the conduct and that he
21   has suffered a concrete financial loss."  Myers v. Encore Credit, CIV S-11-1714 KJM,
22   2012 WL 4511033 (E.D. Cal. Sept. 30, 2012) (citing Chaset v. Fleer/Skybox Intern., LP,
23   300 F.3d 1083, 1086 (9th Cir. 2002).  "Congress enacted RICO 'to combat organized
24   crime, not to provide a federal cause of action and treble damages' for personal injuries."
25   Id. (quoting Oscar, 965 F.2d at 785).  Here, Plaintiff does not allege any concrete
26   financial loss—he does not allege that he has had to pay late fees, fines, or that he has
27   actually lost his home.
28   ///

1    His Complaint states only that "as a proximate result of this pattern of racketeering

2    activity, all defendants have damaged Mr. Kouretas and his family in an amount

3    provable at trial."  Compl. at 7.  Thus, Plaintiff fails to show that his property or person

4    has been injured.

5         As such, Defendants' Motion to Dismiss Plaintiff's third cause of action is

6    GRANTED.

7         **C.    Elder Abuse**

8         Plaintiff alleges only that "Mr. Kouretas is an elderly individual" and

9    "Defendants . . . by their actions alleged herein, did wantonly violate California law

10   against the physical, emotional, and financial abuse of elders."  Compl. at 7.  Nationstar

11   contends that elder abuse is not a cause of action, and cites to ARA Living Centers-

12   Pacific, Inc. v. Superior Court, 18 Cal. App. 4th 1556 (1993), Delaney v. Baker,

13   20 Cal.4th 23 (1999) and Berkeley v. Dowds, 152 Cal. App. 4th 518 (2007), for this

14   proposition.  However, Perlin v. Fountain View Management, Inc., 163 Cal. App. 4th 657,

15   665-66 (2008) examined ARA Living Berkeley, and Delaney, and rejected those holdings

16   as "inconsistent with the California Supreme Court's dicta" in Covenant Care, Inc. v.

17   Superior Court, 32 Cal. 4th 771 (2004), which referred to "Elder Abuse Act causes of

18   action," "an Elder Abuse Act cause of action," to "Elder Abuse Act claims," and to "an

19   action under the Elder Abuse Act."  Perlin, 163 Cal. App. 4th at 667-66.  "Additionally,

20   such claims have been recognized by other California appellate courts and numerous

21   federal courts."  Rand v. Am. Nat. Ins. Co., C 09-0639 SI, 2009 WL 2252115 (N.D. Cal.

22   July 28, 2009) (citing Intrieri v. Superior Court, 117 Cal. App. 4th 72, 82 (2004); Benun v.

23   Superior Court, 123 Cal. App. 4th 113, 119 (2004); Wolk v. Green, 516 F. Supp. 2d

24   1121, 1133 (N.D. Cal. 2007), Negrete v. Fid. & Guar. Life Ins. Co., 444 F. Supp. 2d 998,

25   1002 (C.D. Cal. 2006)); see also Zimmer v. Nawabi, 566 F. Supp. 2d 1025, 1033-34

26   (addressing merits of "Financial Elder Abuse Claim").  "Indeed, California Welfare and

27   Institutions Code section 15657 itself is entitled, 'Civil Actions for Abuse of Elderly or

28   Dependent Adults.'"  Id. at 666.

1   Accordingly, this Court finds that Plaintiff may bring a cause of action for Elder Abuse.

2       The California Legislature enacted the Elder Abuse Act, Cal. Welf. & Inst. Code

3   §§ 15600-15675, "to protect elders by providing enhanced remedies which encourage

4   private, civil enforcement of laws against elder abuse and neglect." Negrete,

5   444 F. Supp. 2d at 1001.  A person is considered an "elder" under the Act if the person

6   is sixty-five years of age or older.  Cal. Welf. & Inst. Code § 15610.27.  Financial elder

7   abuse is defined in subsection 15610.30(a), which provides:

8           "Financial abuse" of an elder or dependent adult occurs when
            a person or entity does any of the following: (1) Takes,
9           secretes, appropriates, or retains real or personal property of
            an elder or dependent adult to a wrongful use or with intent to
10          defraud, or both. (2) Assists in taking, secreting,
            appropriating, or retaining real or personal property of an
11          elder or dependent adult to a wrongful use or with intent to
            defraud, or both.
12

13  Cal. Welf. & Inst. Code § 15610.30(a)(1)-(2).  To utilize the Elder Abuse Act's enhanced

14  remedies, a plaintiff must prove "by clear and convincing evidence that the defendant

15  has been guilty of recklessness, oppression, fraud, or malice in the commission of the

16  abuse." Id. § 15657.5(b).

17      Here, Plaintiff fails to allege that any person or entity has "take[n], secrete[d],

18  appropriate[d], or retaine[d]" his real or personal property.  Plaintiff's bare-bones

19  allegation that Defendants "wantonly violate[d] California law against the physical,

20  emotional, and financial abuse of elders," along with the remaining allegations in

21  Plaintiff's complaint, is not sufficient to state a claim upon which relief can be granted

22  under the Elder Abuse Act, as there is simply no allegation that Plaintiff has been

23  deprived of any real or personal property at all.

24      Accordingly, Defendants' Motion to Dismiss Plaintiff's fourth cause of action is

25  hereby GRANTED

26  ///

27  ///

28  ///

1

**CONCLUSION**

2

3        For the reasons set forth above, Defendant Nationstar's Motion to Dismiss, ECF

4  No. 16, is GRANTED with leave to amend.  Defendant BofA's Motion to Dismiss, ECF

5  No. 13, is likewise GRANTED with leave to amend.

6        Plaintiff has twenty (20) days from the date of this Memorandum and Order to file

7  an amended complaint.  If no amended complaint is filed, all causes of action dismissed

8  by this Memorandum and Order will be dismissed with prejudice without further notice to

9  the parties.

10        IT IS SO ORDERED.

11  Dated:  March 12, 2014

12

13

14                                    _____
                                      MORRISON C. ENGLAND, JR., CHIEF JUDGE
15                                    UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26

27

28

11